**BRODSKY & SMITH, LLC**
Evan J. Smith, Esquire
Ryan P. Cardona, Esquire
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (610) 667-9029
esmith@brodsky-smith.com

*Attorneys for Plaintiff Nicholas Neinast*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS NEINAST, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OCLARO, INC., MARISSA PETERSON, EDWARD COLLINS, GREG DOUGHERTY, KENDALL COWAN, DENISE HAYLOR, IAN SMALL, BILL SMITH, JOEL A. SMITH III, LUMENTUM HOLDINGS INC., PROTA MERGER SUB, INC., and PROTA MERGER, LLC,<br><br>Defendants. | **Civil Action No. _____**<br><br>**CLASS ACTION COMPLAINT FOR BREACH OF FIDUCIARY DUTIES AND VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Nicholas Neinast ("Plaintiff"), by his attorneys, on behalf of himself and those similarly situated, files this action against the defendants, and alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

### SUMMARY OF THE ACTION

1.     Plaintiff brings this stockholder class action on behalf of himself and all other public stockholders of Oclaro, Inc. ("Oclaro" or the "Company"), against Oclaro, and the Company's Board of Directors (the "Board" or the "Individual Defendants") for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") and for

breaches of fiduciary duty as a result of Defendants' efforts to sell the Company to Lumentum Holdings Inc. ("Parent"), and its affiliates Prota Merger Sub, Inc. and Prota Merger, LLC (collectively with Parent, "Lumentum") (Lumentum, the Board, and the Company are collectively referred to herein as the "Defendants") as a result of an unfair process for an unfair price, and to enjoin the stockholder vote on a proposed stock and cash transaction valued at approximately $1.8 Billion (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a March 12, 2018, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").  Under the terms of the Merger Agreement, Oclaro will become an indirect wholly-owned subsidiary of Lumentum, and Oclaro shareholders will receive a mix of cash and stock totaling $5.60 in cash and 0.0636 shares of Lumentum common stock for each share of Oclaro common stock they own.  At the time of the signing of the Merger Agreement, Lumentum shares were trading for $68.98, resulting in an approximate valuation of Oclaro shares at $9.99 per share.

3.      Thereafter, on May 17, 2018, Lumentum filed a Registration Statement on Schedule S-4 (the "S-4") with the Securities and Exchange Commission (the "SEC") in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair and undervalued for a number of reasons. Significantly, the S-4 describes an insufficient sales process in which the Board only paid lip service to its fiduciary duties by creating a special committee of the Board to serve as an "M&A Committee".  However, the S-4 reveals that the M&A Committee was inherently flawed as Defendant Dougherty, the Company CEO, and an inside Director, who stands to receive tens of millions of dollars upon the consummation of the Proposed Transaction, was selected to sit on the committee.

5.      Moreover, the S-4 does not indicate what powers, if any this M&A Committee would have to veto a proposed strategic alternative.

6.      Further shirking their fiduciary duties, it appears that the M&A Committee, and the Board at large, decided against conducting any form of market check throughout the sales process.

7.      Next, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits with no thought to the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.  Moreover, certain Directors and other insiders will also be the recipients of lucrative change-in-control agreements, triggered upon the termination of their employment as a consequence of the consummation of the Proposed Transaction.

8.      Defendants breached their fiduciary duties to the Company's stockholders by agreeing to the Proposed Transaction which undervalues Oclaro and is the result of a flawed sales process.

9.      In violation of sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), and in violation of their fiduciary duties, Defendants caused to be filed the materially deficient S-4 on May 17, 2018 with the United States Securities and Exchange Commission ("SEC") in an effort to solicit stockholders to vote their Oclaro shares in favor of the Proposed Transaction.  The S-4 is materially deficient and deprives Oclaro stockholders of the information they need to make an intelligent, informed and rational decision of whether to vote their shares in favor of the Proposed Transaction.  As detailed below, the S-4 omits and/or misrepresents material information concerning, among other things: (a) the sales process leading up to the Proposed Transaction; (b) the financial projections for Oclaro, provided by Oclaro to the Company's financial advisor Jefferies LLC ("Jefferies") for use in its financial analyses; (c) the financial projections for Lumentum, provided by Lumentum to Jefferies for use in its financial analyses ; and (d) the data and inputs underlying the financial valuation analyses that purport to support the fairness opinions provided by the Company's financial advisor, Jefferies.

10.      Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff and the Class.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from violation of the federal securities laws by Defendants.

CLASS ACTION COMPLAINT

**PARTIES**

11.     Plaintiff is a citizen of California and, at all times relevant hereto, has been an Oclaro stockholder.

12.     Defendant Oclaro designs, manufactures, and markets optical components, modules, and subsystems for the long-haul, metro, and data center markets worldwide.  Oclaro is incorporated under the laws of the State of Delaware and has its principal place of business at 225 Charcot Avenue, San Jose, CA 95131.   Shares of Oclaro common stock are traded on the NasdaqGS under the symbol "OCLR."

13.     Defendant Marissa Peterson ("Peterson") has been a Director of the Company at all relevant times.  In addition, Peterson serves as the Chairman of the Company Board and as a member on the Board's Audit Committee.

14.     Defendant Edward Collins ("Collins") has been a director of the Company at all relevant times.  In addition, Collins serves on the Board's Audit and Nominating and Corporate Governance Committees.

15.     Defendant Greg Dougherty ("Dougherty") has been a director of the Company at all relevant times.  In addition, Dougherty serves as the Chief Executive Officer ("CEO") of the Company.

16.     Defendant Kendall Cowan ("Cowan") has been a director of the Company at all relevant times.  In addition, Cowan serves as the chair of the Audit Committee and as a member on the Compensation Committee.

17.     Defendant Denise Haylor ("Haylor") has been a director of the Company at all relevant times.  In addition Haylor serves as the chair of the Board's Compensation Committee.

18.     Defendant Ian Small ("Small") has been a director of the Company at all relevant times.  In addition, Small serves on the Board's Compensation and Nominating and Corporate Governance Committees.

19.     Defendant Bill Smith ("B. Smith") has been a director of the Company at all relevant times.  In addition, B. Smith serves as a member of the Compensation and Nominating and Corporate Governance Committee.

20.     Joel A. Smith III ("J. Smith") has been a director of the Company at all relevant times.   In addition, J. Smith serves as a member of the Compensation and Nominating and Corporate Governance Committee.

21.     Defendants identified in ¶¶ 13 - 20 are collectively referred to as the "Individual Defendants."

22.     Parent manufactures and sells optical and photonic products in the Americas, the Asia-Pacific, Europe, the Middle East, and Africa.  Parent operates through two segments, Optical Communications and Commercial Lasers.  Parent is a corporation organized under the laws of the State of Delaware and has its principal place of business at 400 North McCarty boulevard, Milpitas, CA 95035.  Parent common stock is traded on the NasdaqGS under the ticker symbol "LITE."

23.     Prota Merger Sub, Inc. and Prota Merger, LLC are wholly owned subsidiaries of Parent created to effectuate the Proposed Transaction, and can be served care of parent.

## JURISDICTION AND VENUE

24.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.

25.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

26.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Oclaro has its principal place of business is located in this District, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

CLASS ACTION COMPLAINT

**CLASS ACTION ALLEGATIONS**

27.    Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23, individually and on behalf of the stockholders of Oclaro common stock who are being and will be harmed by Defendants' actions described herein (the "Class").  The Class specifically excludes Defendants herein, and any person, firm, trust, corporation or other entity related to, or affiliated with, any of the Defendants.

28.    This action is properly maintainable as a class action because:

a.  The Class is so numerous that joinder of all members is impracticable.  As of May 4, 2018, there were more than 170 million common shares of Oclaro stock outstanding.  The actual number of public stockholders of Oclaro will be ascertained through discovery;

b.  There are questions of law and fact which are common to the Class, including *inter alia*, the following:

i.   Whether Defendants have violated the federal securities laws;

ii.  Whether Defendants made material misrepresentations and/or omitted material facts in the S-4; and

iii. Whether Plaintiff and the other members of the Class have and will continue to suffer irreparable injury if the Proposed Transaction is consummated.

c.  Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature and will fairly and adequately protect the interests of the Class;

d.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual

members of the Class which would establish incompatible standards of conduct for the party opposing the Class;

f.  Plaintiff anticipates that there will be no difficulty in the management of this litigation and, thus, a class action is superior to other available methods for the fair and efficient adjudication of this controversy; and

g.  Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

**THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES**

29.    By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Oclaro and owe the Company the duties of due care, loyalty, and good faith.

30.    By virtue of their positions as directors and/or officers of Oclaro, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Oclaro to engage in the practices complained of herein.

31.    Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

a.  act with the requisite diligence and due care that is reasonable under the circumstances;

b.  act in the best interest of the company;

c.  use reasonable means to obtain material information relating to a given action or decision;

d.  refrain from acts involving conflicts of interest between the fulfillment of their roles in the company and the fulfillment of any other roles or their personal affairs;

      e.   avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

      f.   disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the company.

32.    In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Oclaro, are obligated to refrain from:

      a.   participating in any transaction where the directors' or officers' loyalties are divided;

      b.   participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders; and/or

      c.   unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders.

33.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Oclaro, Plaintiff and the other public stockholders of Oclaro, including their duties of loyalty, good faith, and due care.

34.    As a result of the Individual Defendants' divided loyalties, Plaintiff and Class members will not receive adequate, fair or maximum value for their Oclaro common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

### Company Background

35.    Oclaro designs, manufactures, and markets optical components, modules, and subsystems for the long-haul, metro, and data center markets worldwide.

36.    The Company's products generate, detect, combine, and separate light signals in optical communications networks. The Company offers client side transceivers, including

pluggable transceivers; line side transceivers; tunable laser transmitters, such as discrete lasers and co-packaged laser modulators; lithium niobate modulators to manipulate the phase or the amplitude of an optical signal; transponder modules for transmitter and receiver functions; and discrete lasers and receivers for metro and long-haul applications.  The Company markets its products through direct sales force, as well as through sales representatives and resellers and serves network equipment manufacturers of telecommunications and datacom systems, and hyperscale data center operators.

37.     The Company's most recent financial performance press release before the announcement of the Proposed Transaction indicated sustained and solid financial performance. For example, in a February 5, 2018 press release announcing its Fiscal 2018 Q2 financial results, Company CEO Dougherty noted on the Company's positive financial results as follows, "…the team again delivered strong gross margin, profitability and cash flow."

38.     Defendant Dougherty went on to comment on a strong future outlook for Oclaro noting anticipating "another quarter of solid operating income" and expecting revenue growth in the future.

39.     The market also reacted well to Oclaro's strong showing at this time, with Steve Symington of *The Motley Fool* reporting in a February 6, 2018 article that Oclaro's Fiscal 2018 Q2 results were "stronger than expected".

40.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success by Oclaro.  For example, in a November 1, 2017 press release announcing the Company's Financial 2018 Q1 financial results, Oclaro reported such positive an increase in gross revenue for the quarter of approximately $6 million and an increase in gross revenue year-on-year of approximately $20 million.

41.     Speaking on these results, Defendant Dougherty stated, "The Oclaro team once again produced strong quarterly results, fueled by our CFP2-ACO and QSFP product lines.  We generated sequential revenue growth and strong profitability."

42.     Clearly, based upon these positive financial results, the Company is likely to have tremendous future success and should command a much higher consideration than the amount contained within the Proposed Transaction.

43.     Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Oclaro to enter into the Proposed Transaction for insufficient consideration.

***The Flawed Sales Process***

44.     As detailed in the S-4, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company to Lumentum.

45.     First and foremost, it appears that no proper market check was conducted by the Company or its financial advisor during the sales process, and rather, the only companies which were involved were contacted piece meal by Defendant Dougherty or had contacted the Company of their own volition.  Such a failure to conduct a simple market check is even more astounding when one considers that the S-4 admits that the overall sales process, and Jefferies' retention as financial advisor, *began more than four years prior to the date of the entry into the Proposed Transaction*.

46.     Additionally, while the S-4 indicates that an "M&A Committee" was created to "assist the Board in its oversight of management's efforts relating to, and discussions with third parties concerning, potential strategic transactions", this M&A Committee was merely lip service to the Board's proper fiduciary duties.  Notably, the Committee was headed by Defendant Dougherty, an inside Director and the CEO of the Company; as such, the M&C Committee was not shielded by any improper motivations that such an insider may have had in entering into the Proposed Transaction.  Additionally, the S-4 is unclear and/or misleading as to what the actual powers of the M&A Committee are, especially in relation to if M&A Committee approval was necessary to submit a potential strategic alternative to the full Board, or if it had veto power over potential strategic alternatives.

47.     Moreover, the S-4 is unclear as to the nature of specific confidentiality and/or non-disclosure agreements Oclaro entered into with various third parties and Lumentum throughout the sales process, if any such agreements were different from one another, the terms of any included "don't-ask, don't-waive" provisions or standstill provisions in those agreements, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid.

48.     Finally, the S-4 indicates that at the same time the Board was shopping Oclaro, it was trying to effectuate a purchase of a third party company ("Company F"), but it fails to disclose sufficient information as to why after Oclaro's initial bid was not accepted by Company F, Oclaro failed to submit a higher bid or attempt to negotiate at any later point in the process.

49.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate manner, with an obvious end-goal of a Lumentum transaction.  For example, despite receiving several indications of interest regarding proposed strategic alternatives from various third parties, and additional parties throughout the sales process, neither the Board nor the so-called independent Transaction Committee thought it proper to conduct a market check at any point for additional interested third parties.

**The Proposed Transaction**

50.     On March 12, 2018, Oclaro and Lumentum issued a press release announcing the Proposed Transaction.  The press release stated, in relevant part:

**Milpitas, Calif., and San Jose, Calif., March 12, 2018** – Lumentum Holdings Inc. ("Lumentum" or the "Company") a leading provider of photonics products for optical networking and lasers for industrial and consumer markets, and Oclaro, Inc. ("Oclaro") a leader in optical components and modules for the long-haul, metro, and data center markets, today announced that the two companies have signed a definitive agreement, unanimously approved by the boards of directors of both companies, pursuant to which Lumentum will acquire all of the outstanding common stock of Oclaro. For each share of Oclaro stock held, Oclaro stockholders will be entitled to receive $5.60 in cash and 0.0636 of a share of Lumentum common stock, subject to the terms of the definitive agreement.  The transaction values Oclaro at $9.99 per share or approximately $1.8 billion in equity value, based on the closing price of Lumentum's stock on March 9, 2018, of $68.98.  The transaction value represents a premium of 27% to Oclaro's closing price on March 9, 2018 and a premium of 40% to Oclaro's 30 day average closing price.  Oclaro stockholders are expected to own approximately 16% of the combined company at closing.

CLASS ACTION COMPLAINT

"Joining forces with Oclaro strengthens our product portfolio, broadens our revenue mix, and positions us strongly for the future needs of our customers. Oclaro brings its leading Indium Phosphide laser and Photonic Integrated Circuit and coherent component and module capabilities to Lumentum.  The combined company will drive innovation faster and accelerate the development of products to enable our customers to win," said Alan Lowe, Lumentum's President and CEO.  "We are delighted to welcome the talented Oclaro team to Lumentum and look forward to a swift completion of the transaction with a focus on supporting our customers and delivering shareholder value."

"I am very pleased that two of the optical industry leaders, Oclaro and Lumentum, will join forces.  Together, we will be an even stronger player in fiber optic components and modules for high-speed communications and a market leader in 3D sensing.  This is a fantastic combination for all of our stakeholders, including stockholders, employees, customers and partners," said Greg Dougherty, Oclaro's CEO.  "I am extremely proud of what the Oclaro team has accomplished over the last five years.  We have enjoyed tremendous success and this combination will create even more exciting opportunities for the team."

The transaction is expected to generate more than $60 million of annual run-rate synergies within 12 to 24 months of the closing and be immediately accretive to non-GAAP earnings per share.

Lumentum intends to fund the cash consideration with a combination of cash on hand from the combined companies' balance sheets and $550 million in debt financing.  The transaction is expected to close in the second half of calendar 2018, subject to approval by Oclaro's stockholders, antitrust regulatory approval in the U.S. and China, and other customary closing conditions.

Board of Directors

One member of Oclaro's Board of Directors, as mutually determined, will join Lumentum's Board of Directors upon the closing of the transaction.

Advisors

Deutsche Bank Securities served as the exclusive financial advisor to Lumentum and Wilson Sonsini Goodrich & Rosati served as legal advisor.  Jefferies LLC served as exclusive financial advisor to Oclaro and Jones Day served as legal advisor.

*The Inadequate Merger Consideration*

51.     Significantly, the Company's financial prospects and opportunities for future growth, and synergies with Lumentum establish the inadequacy of the merger consideration.

52.     First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company.  Moreover, the valuation does not adequately take into consideration how the Company is performing, considering key financial improvements and increases in the cash position of the Company in recent years.

53.     For example, financial analysts at DA Davidson valued the Company as high as $11.00 per share only approximately one month before the announcement of the Proposed Transaction, a value more than 10.11% greater than that contained in the implied value contained in the Proposed Transaction.

54.     Moreover, the Company's stock has traded as high as $10.93 per share within a fifty-two week period before the announcement of the proposed transaction, or a value more than 9.4% greater than that contained in the Proposed Transaction.

55.     Additionally, Oclaro's future success is extremely likely, given the consistent positive financial results it has posted over the past several quarters.  Obviously, the opportunity to invest in such a company on the rise is a great coup for Lumentum, however it undercuts the investment of Plaintiff and all other public stockholders.

56.     Finally, the Proposed Transaction represents a significant synergistic benefit to Lumentum, which operates in the same industry as Oclaro, and will use the new assets, operational capabilities, and brand capital to bolster its own position in the market.  Specifically, Alan Lowe, CEO of Lumentum noted in the press release announcing the Proposed Transaction that, "Oclaro brings its leading Indium Phosphide laser and Photonic Integrated Circuit and coherent component and module capabilities to Lumentum.  The combined company will drive innovation faster and accelerate the development of products to enable our customers to win."

57.     Additionally, Defendant Dougherty notes that the combined company will operate "will be an even stronger player in fiber optic components and modules for high-speed communications and a market leader in 3D sensing".

58.     Clearly, while the deal will be beneficial to Lumentum it comes at great expense to Plaintiff and other public stockholders of the Company.

59.     Moreover, post-closure, Oclaro stockholders will see their voting power diluted significantly as stockholders of Lumentum, their ownership share in the surviving entity being significantly smaller than their current holdings, thus shrinking any future benefit from their investment in Oclaro.

60.     It is clear from these statements and the facts set forth herein that this deal is designed to maximize benefits for Lumentum at the expense of Oclaro stockholders, which clearly indicates that Oclaro stockholders were not an overriding concern in the formation of the Proposed Transaction.

***Preclusive Deal Mechanisms***

61.     The Merger Agreement contains certain provisions that unduly benefit Lumentum by making an alternative transaction either prohibitively expensive or otherwise impossible. Significantly, the Merger Agreement contains a termination fee provision that is especially onerous and impermissible.  Notably, in the event of termination, the merger agreement requires Oclaro to pay up to $63 million to Lumentum, if the Merger Agreement is terminated under certain circumstances.  Moreover, under one circumstance, Oclaro must pay this termination fee even if it consummates any competing Acquisition Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement.  The termination fee will make the Company that much more expensive to acquire for potential purchasers.  The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

62.     The Merger Agreement also contains a "No Solicitation" provision that restricts Oclaro from considering alternative acquisition proposals by, *inter alia*, constraining Oclaro's ability to solicit or communicate with potential acquirers or consider their proposals.  Specifically,

the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide *"Acquisition Proposal"* if it constitutes or is reasonably calculated to lead to a *"Superior Proposal"* as defined in the Merger Agreement.

63.     Moreover, the Agreement further reduces the possibility of a topping offer from an unsolicited purchaser.  Here, the Individual Defendants agreed to provide Lumentum information in order to match any other offer, thus providing Lumentum access to the unsolicited bidder's financial information and giving Lumentum the ability to top the superior offer.  Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of Lumentum.

64.     These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company and its public stockholders.

65.     In addition, the Merger Agreement does not include protections to ensure that the consideration payable to shareholders will remain within a range of reasonableness.  In a conventional transaction which contemplates stock of the acquiring company as a whole or part of the consideration offered in the Proposed Transaction, the parties often negotiate and implement a "floor" on the value of the consideration payable to shareholders, which establishes the lowest possible price payable.  Such transactions also often include a "collar," which establishes parameters that attempt to minimize the impact of stock price fluctuations on the value of the consideration payable to shareholders.  The Merger Agreement contains none of these protections.  Rather, the Merger Agreement contains a *fixed* exchange ratio of 0.0636 which means that Oclaro shareholders will receive 0.0636 shares of Lumentum common stock for each of their shares, *regardless of Lumentum's stock price at the close of the transaction*.  Thus, the consideration payable to Oclaro shareholders is not insulated from fluctuations in Lumentum's stock price, and shareholders are left in the precarious position of not knowing whether the consideration payable to them will decline further.

66.     Further exacerbating the issue of a fixed exchange ratio is the fact that both Oclaro and Lumentum's stock price have been effected by the April 15, 2018, U.S. Department of Commerce's recent order activating a recently suspended ban on sales and exports to Chinese company Zhingxing Telecommunications Equipment ("ZTE"), and subsequent statements made by President Trump since that time indicating that such a ban may, or may not be, reversed.  ZTE is a major customer of both Oclaro and Lumentum, and its inability to purchase telecom components from U.S. based businesses such as the Company and Parent, will undoubtedly have a negative effect on their stock prices.  Specifically, the S-4 indicates that ZTE accounted for 18%, 10%, and 7.3%, of Oclaro's revenues in fiscal 2017, fiscal 2016, and fiscal 2015, respectively.  However, the S-4 does not disclose the same information relating to Lumentum's business relationship with ZTE.  Such a lack of transparency is noteworthy, given that it will have a significant impact on Lumentum's revenues, and therefore on Oclaro's stockholders decision on whether to vote in favor of the Proposed Transaction.

67.     In fact, the only adjustment available for the exchange ratio of the Lumentum stock to be paid to Oclaro stockholders under the terms of the Proposed Transaction is put in place to protect Lumentum from overly diluting its own stock's value.  Specifically, the Merger Agreement expressly allows Lumentum to adjust the stock valuation component of the merger consideration downward if the Lumentum stock issued as part of the Proposed Transaction would exceed 19.9% of the issued and outstanding stock of Lumentum.  Such a provision protecting the interest of Lumentum, but the absence of a similar one to protect Plaintiff and other Oclaro stockholders is indicative of the intentions of those crafting the Proposed Transaction, namely, the Defendants.

68.     Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

***Potential Conflicts of Interest***

69.     The sales process as indicated in the S-4 leading up to the Proposed Transaction indicate serious flaws in the supposed unbiased nature of the decision to enter into the Proposed Transaction.

CLASS ACTION COMPLAINT

70.     First and foremost, as mentioned above and in the S-4, the M&A Committee tasked with overseeing the sales process was conflicted from its inception with the inclusion of Defendant Dougherty.

71.     In addition, the breakdown of the benefits of the deal indicate that Oclaro insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Oclaro.

72.     Certain insiders stand to receive massive financial benefits as a result of the Proposed Transaction.  Notably, Company insiders, including the Individual Defendants, currently own large, illiquid portions of Company stock that will be exchanged for significant stakes in the combined corporation upon the consummation of the Proposed Transaction.

73.     Furthermore, upon the consummation of the Proposed Transaction, each outstanding Company option, will be canceled and converted into the right to the merger consideration.

74.     Additionally, upon the consummation of the Proposed Transaction, each outstanding Company restricted stock unit ("RSU"), will be canceled and converted into the right to the merger consideration.

75.     As detailed below, certain of the Individual Defendants and Company insiders own millions of dollars in large illiquid blocks of Oclaro stock and/or options, RSUs, and/or other equity awards, which will be paid out as follows under the terms of the Proposed Transaction:

| Name | Oclaro Stock Options (#)(1) | Oclaro RSUs (#) | Oclaro PSUs (#)(2) | Oclaro Restricted Stock Awards (#)(3) | Total Consideration in respect of Equity Awards ($) |
|---|---|---|---|---|---|
| Greg Dougherty | 31,560 | 331,326 | 432,150 | — | $ 7,807,707 |
| Pete Mangan | 15,000 | 161,235 | 206,235 | — | $ 3,790,275 |
| Yves LeMaitre | 23,200 | 151,235 | 191,235 | — | $ 3,434,785 |
| David Teichmann | 85,000 | 120,298 | 148,735 | — | $ 3,347,570 |
| Adam Carter | 100,000 | 107,905 | 115,405 | — | $ 3,067,333 |
| Craig Cocchi | — | 130,000 | 120,000 | — | $ 2,502,500 |
| Walter Jankovic | — | 160,000 | — | — | $ 1,601,600 |
| Thomas Gordon Beck Mason | — | 109,575 | 99,575 | — | $ 2,093,592 |
| Lisa Paul | 60,000 | 94,155 | 102,905 | — | $ 2,455,571 |

CLASS ACTION COMPLAINT

| Marissa Peterson | 17,046 | — | — | 18,762 | $ | 296,385 |
| Edward Collins | 35,779 | — | — | 18,762 | $ | 369,358 |
| Kendall Cowan | — | — | — | 18,762 | $ | 187,808 |
| Denise Haylor | — | — | — | 13,346 | $ | 133,593 |
| Ian Small | — | — | — | 42,153 | $ | 421,952 |
| William L. Smith | — | — | — | 18,762 | $ | 187,808 |
| Joel A. Smith III | 31,560 | — | — | 18,762 | $ | 353,120 |

76.     Moreover, certain employment agreements with all Oclaro's executives, including Defendant Dougherty, are entitled to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Oclaro's common stockholders.  Specifically, such golden parachute compensation will be paid out to Company insiders as follows:

| Name (1) | Cash ($)(2) | Equity ($)(3) | Perquisites/ Benefits ($) (4) | Total ($) |
|---|---|---|---|---|
| Greg Dougherty | 2,400,000 | 7,642,395 | 144,000 | 10,186,395 |
| Pete Mangan | 757,750 | 3,678,374 | 72,000 | 4,508,124 |
| Yves LeMaitre | 757,750 | 3,428,124 | 72,000 | 4,257,874 |
| David Teichmann | 706,380 | 2,697,308 | 72,000 | 3,475,688 |
| Adam Carter | 646,904 | 2,304,672 | 72,000 | 3,023,576 |

77.     Additionally, at least one as-of-yet-unknown Company Board member will continue in their role of a Director on the Lumentum Board of Directors.  Such employment carries with it significant compensation not shared amongst Plaintiff or Oclaro's public stockholders.

78.     It is no wonder that, in light of the extremely lucrative profits for themselves, the Board allowed the Company to be sold far under its proper value in order to secure a quick sale.

79.     Thus, while the Proposed Transaction is not in the best interests of Oclaro stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete S-4***

80.     On May 17, 2018, Lumentum filed with the SEC a materially misleading and incomplete S-4 that failed to provide the Company's stockholders with material information and/or provides them with materially misleading information critical to the total mix of information available to the Company's stockholders concerning the financial and procedural fairness of the Proposed Transaction.

CLASS ACTION COMPLAINT

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

81.    Specifically, the S-4 fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Proxy fails to disclose:

a.    The S-4 fails to disclose sufficient information regarding the number and nature of all confidentiality agreements entered into between Oclaro and any interested third party during the sales process, if their terms differed from one another, and if they contained "don't-ask, don't-waive" or standstill provisions, and if so, the specific conditions, if any, under which such provisions would fall away or prevent parties from submitting a bid.

b.    The S-4 fails to disclose information regarding why no further outreach was directed at Company F regarding Oclaro's interest in acquiring it;

c.    The S-4 fails to disclose the basis for creating an M&A Committee that contained Defendant Dougherty and was therefore, not independent;

d.    The S-4 fails to disclose sufficient information regarding what specific powers the M&A Committee had in relation to approval or denial of proposed strategic alternatives;

e.    The S-4 fails to disclose any reasoning whatsoever for the failure to perform a market check for potentially interested third parties at any point during the sales process;

f.    The identity of the Oclaro Board member that will join the Lumentum Board post-consummation of the Proposed Transaction; and

g.    The percentage of Lumentum's total revenues that was related to ZTE purchases for the 2017, 2016, and 2015 financial year.

**CLASS ACTION COMPLAINT**

*Omissions and/or Material Misrepresentations Concerning Oclaro's Financial Projections*

82.     The S-4 fails to provide material information concerning financial projections provided by Oclaro's management and relied upon by Jefferies in its analyses.  The S-4 discloses management-prepared financial projections for the Company which are materially misleading. The S-4 indicates that in connection with the rendering of Jefferies' fairness opinion, Jefferies reviewed "reviewed certain information furnished to Jefferies by Oclaro's management, including financial forecasts and analyses, relating to the business, operations and prospects of Oclaro." Accordingly, the S-4 should have, but fails to provide, certain information in the projections that Oclaro management provided to the Board and Jefferies.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

83.     The S-4 fails to provide material information concerning the financial projections prepared by Oclaro management.  Specifically, the S-4 fails to disclose the material line items for the following metrics:

   a.  The line items used to calculate Non-GAAP Operating Income, including
          i.   Total Operating Expense
   b.  The line items used to calculate Adjusted EBITDA, including:
          i.   share based compensation;
          ii.  fixed asset disposal and restructuring / M&A charges
   c.  The line items used to calculate Free Cash Flow, including:
          i.   Capital Expenditures;
   d.  The line items used to calculate Unlevered Free Cash Flow, Including:
          i.   Net operating profit after taxes;
          ii.  Depreciation;
          iii. Amortization;

iv.   Capital expenditures; and

v.   Changes in net working capital.

e.   Adjusted EPS, including:

i.   Interest income;

ii.   Interest;

iii.   The methods used to calculate the provision of tax rates for fiscal years 2018, 2019-2021, and 2022 of 3%, 17%, and 21%, respectively;

iv.   Forecasted diluted share count.

84.   Additionally, the S-4 provides several non-GAAP financial metrics, including Non-GAAP operating Income, adjusted EBITDA, and unlevered free cash flows, but fails to disclose a reconciliation of all non-GAAP to GAAP metrics, as described above.

85.   This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness.  Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

86.   Without accurate projection data presented in the S-4, Plaintiff and other stockholders of Oclaro are unable to properly evaluate the Company's true worth, the accuracy of Jefferies' financial analyses, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning Lumentum's Financial Projections*

87.   The S-4 fails to provide material information concerning financial projections provided by Lumentum management and relied upon by Jefferies in its analyses.  The S-4 indicates that in connection with the rendering of Jefferies' fairness opinion, Jefferies reviewed "reviewed certain information furnished to Jefferies by Lumentum's management, including financial forecasts and analyses, relating to the business, operations and prospects of Lumentum."  Accordingly, the S-4 should have, but fails to provide, certain information in the projections that Lumentum management provided to the Board and Jefferies.  Courts have uniformly stated that

"projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

88.     Despite the S-4 indicating that Jefferies was provided with Lumentum's projections, and that it relied upon them in performing its financial analyses, the S-4 provides no information whatsoever regarding the Lumentum projections.

89.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness.  Without this information, stockholders were not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

90.     Without accurate projection data presented in the S-4, Plaintiff and other stockholders of Oclaro are unable to properly evaluate Lumentum's true worth (which is highly relevant, given that a portion of the merger consideration consists of Lumentum stock), the accuracy of Jefferies' financial analyses, or make an informed decision whether to vote their Company stock in favor of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Jefferies*

91.     In the S-4, Jefferies describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

92.     With respect to the *Oclaro Discounted Cash Flow Analysis*, the S-4 fails to disclose the following:

    a.   the specific inputs and assumptions used to calculate the perpetuity growth rates of Oclaro's estimated free cash flow in fiscal year 2022 ranging from 4.0 % to 6.0%;

b.  the specific inputs and assumptions used to calculate the discount rate range of 11.0% to 13.0%;

93.  With respect to the *Selected Publicly Traded Companies Analysis*, the S-4 fails to disclose the following:

a.  The specific benchmark multiples for each analyzed comparable company;

b.  The specific benchmark multiples for Oclaro on a standalone basis;

94.  With respect to the *Selected Transactions Analysis*, the S-4 fails to disclose the following:

a.  The specific date on which each selected transaction closed;

b.  The value of each selected transaction;

c.  The specific benchmark multiples for each transaction.

95.  With respect to the section of Jefferies' opinion simply titled *Oclaro* (which appears to be a comparable premia analysis), the S-4 fails to disclose the following:

a.  The names of the companies and entities involved for all 86 analyzed transactions;

b.  The specific one-day and one-month premia for all 86 analyzed transactions.

96.  With respect to the section of Jefferies' opinion simply titled *Lumentum* (which is also described as a *Lumentum selected publicly traded companies analysis*), the S-4 fails to disclose;

a.  The specific benchmark multiples for each analyzed comparable company;

b.  The specific benchmark multiples for Oclaro on a standalone basis;

97.  These disclosures are critical for stockholders to be able to make an informed decision on whether to vote their shares in favor of the Proposed Transaction.

98.  Without the omitted information identified above, Oclaro's public stockholders are missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves their interests.  Moreover, without the key financial information and related disclosures, Oclaro's public stockholders cannot gauge the reliability of

1  the fairness opinion and the Board's determination that the Proposed Transaction is in their best

2  interests.

### FIRST COUNT

### Claim for Breach of Fiduciary Duties

### (Against the Individual Defendants)

6    99.    Plaintiff repeats all previous allegations as if set forth in full herein.

7    100.   The Individual Defendants have violated their fiduciary duties of care, loyalty and

8  good faith owed to Plaintiff and the Company's public stockholders.

9    101.   By the acts, transactions and courses of conduct alleged herein, Defendants,

10 individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff and

11 other members of the Class of the true value of their investment in Oclaro.

12   102.   As demonstrated by the allegations above, the Individual Defendants failed to

13 exercise the care required, and breached their duties of loyalty and good faith owed to the

14 stockholders of Oclaro by entering into the Proposed Transaction through a flawed and unfair

15 process and failing to take steps to maximize the value of Oclaro to its public stockholders.

16   103.   Indeed, Defendants have accepted an offer to sell Oclaro at a price that fails to

17 reflect the true value of the Company, thus depriving stockholders of the reasonable, fair and

18 adequate value of their shares.

19   104.   Moreover, the Individual Defendants breached their duty of due care and candor by

20 failing to disclose to Plaintiff and the Class all material information necessary for them to make

21 an informed vote on whether to approve the Merger.

22   105.   The Individual Defendants dominate and control the business and corporate affairs

23 of Oclaro, and are in possession of private corporate information concerning Oclaro's assets,

24 business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and

25 economic power between them and the public stockholders of Oclaro which makes it inherently

26 unfair for them to benefit their own interests to the exclusion of maximizing stockholder value.

27

28

106.    By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff and the other members of the Class.

107.    As a result of the actions of the Individual Defendants, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Oclaro's assets and have been and will be prevented from obtaining a fair price for their common stock.

108.    Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff and the members of the Class, all to the irreparable harm of the Class.

109.    Plaintiff and the members of the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## SECOND COUNT

## Violations of Section 14(a) of the Exchange Act

## (Against All Defendants)

110.    Plaintiff repeats all previous allegations as if set forth in full herein.

111.    Defendants have disseminated the S-4 with the intention of soliciting stockholders to vote their shares in favor of the Proposed Transaction.

112.    Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent

CLASS ACTION COMPLAINT

or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

113.    As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

114.    The S-4 was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the S-4 is materially misleading and omits material facts that are necessary to render them non-misleading.

115.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

116.    The Individual Defendants were at least negligent in filing an S-4 that was materially misleading and/or omitted material facts necessary to make the S-4 not misleading.

117.    The misrepresentations and omissions in the S-4 are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of its entitlement to decide whether to vote its shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

### THIRD COUNT

### Violations of Section 20(a) of the Exchange Act

### <u>(Against all Individual Defendants)</u>

118.    Plaintiff repeats all previous allegations as if set forth in full herein.

119.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the S-4 was materially misleading to Company stockholders.

120.    The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the S-4 and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the S-4.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the S-4 before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

121.    The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Oclaro's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from the Company's stockholders and that the S-4 was misleading.  As a result, the

Individual Defendants are responsible for the accuracy of the S-4 and are therefore responsible and liable for the misrepresentations contained herein.

122.    The Individual Defendants acted as controlling persons of Oclaro within the meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the Individual Defendants had the power and authority to cause Oclaro to engage in the wrongful conduct complained of herein.   The Individual Defendants controlled Oclaro and all of its employees.  As alleged above, Oclaro is a primary violator of Section 14 of the Exchange Act and SEC Rule S-4.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in its favor and in favor of the Class, and against the Defendants, as follows:

A.    Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representatives and Plaintiff's counsel as Class counsel;

B.    Enjoining the Proposed Transaction;

C.    In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

D.    Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

E.    Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Oclaro and obtain a transaction which is in the best interests of Oclaro and its stockholders;

F.    Directing defendants to account to Plaintiff and the Class for damages sustained because of the wrongs complained of herein;

G.    Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

H.    Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: May 24, 2018

**BRODSKY & SMITH, LLC**

By: _____
Evan J. Smith, Esquire
Ryan P. Cardona, Esquire
9595 Wilshire Blvd., Ste. 900
Phone:  (877) 534-2590
Facsimile (310) 247-0160
esmith@brodskysmith.com
rcardona@brodskysmith.com

CLASS ACTION COMPLAINT